UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BRENDA CHOATE, Personal | ) | |
| Representative of the Estate of | ) | |
| Ryan Rideout, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 08-49-B-W |
| | ) | |
| JEFFREY MERRILL, et al. | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON PLAINTIFF'S MOTION TO AMEND
THE THIRD AMENDED COMPLAINT**

Brenda Choate filed this action February 15, 2008. Choate's son, Ryan Rideout

committed suicide at the Maine State Prison and Brenda Choate presses her claims as a

representative of her son's estate.  The parties are currently proceeding on the basis of a third

amended complaint filed September 16, 2008.    On March 18, 2009, Choate filed a motion to

amend her third amended complaint.  In the interim, the parties have stipulated to the dismissal

of Defendants Maureen Rubano, Charlie Charlton, Kate Gerrish, James Mac Thomas, and Randy

Thomas from this action.[1]  There have been two responses filed to the pending motion to amend.

One is pressed on behalf of Martin Magnusson, Jeffrey Merrill, Nelson Reilly,[2] James O'Farrell,

Michael Peters, and Corey Robinson. (Doc. No. 91.)[3]   The other opposition is forwarded on

behalf of Correctional Medical Services, Inc. (Doc. No. 90.)[4]  When Choate replied to the two

responses, she filed as an attachment a *new* version of her proposed Fourth Amended Complaint,

---

[1]        (Doc. No. 95.)

[2]        This is the spelling of the name given in the complaint.

[3]        These are the defendants in this group of "State defendants" that remain after the stipulation of dismissal.
Bobby Lee Beard is also a defendant associated with the prison but he is represented by separate counsel and has not
responded to the present motion to amend.

[4]        The other defendant who joined this opposition was Kate Gerrish and she was dismissed under the
stipulation.

(Doc. No. 94-5) abandoning claims under the Rehabilitation Act and the Americans with Disabilities Act and claims against certain individuals responsible for mental health treatment who were consensually dismissed from the action.  Because of the rather unorthodox introduction of a new version (version 4.2) of the proposed Fourth Amended Complaint being submitted at the reply stage of the briefing process, at the request of defense counsel I gave the defendants an opportunity to file any additional responses they thought the new version warranted.  They did so at docket entries 105 & 106.  I then set this matter for a telephonic hearing to discuss the impact of the proposed Fourth Amended Complaint  (version 4.2) and counsel for plaintiff felt compelled to file a supplemental memo in anticipation of that conference, hinting that additional amendments were anticipated, including the addition of new parties to the litigation.

Choate initiated this action one year and three months ago.   The discovery deadline expired the third week in April and dispositive motions were scheduled to be filed by May 26, 2009.  In the interim, there is still no operative complaint that comprehensively states all factual and legal claims.

## DISCUSSION

On March 25, 2008, Choate filed her first amended complaint. (Doc. No. 3.) On May 6, 2008, Choate filed a second motion to amend the complaint. (See Doc. Nos. 14, 15, 21 & 22.) The defendants answered this second amended complaint.  (See Doc. Nos. 31, 32 & 34.)   The June 5, 2008, scheduling order in this case set a deadline of August 21, 2008, for amending the pleadings.  (Doc. No. 33.) Thereafter, on August 16, 2008, five days prior to the deadline, Choate filed a motion to file a third motion to amend which was granted without objection.

The First Circuit addressed a similar situation in Trans-Spec Truck Service, Inc. v. Caterpillar Inc.,

> [A]s the magistrate judge correctly noted, Rule 16(b) establishes a different standard when a motion to amend comes late in the case. Rule 16(b) requires that the district court enter a scheduling order setting the deadlines for subsequent proceedings in the litigation, including amendment of the pleadings. Fed.R.Civ.P. 16(b)(1), (3)(A). One purpose of the rule is "to assure 'that at some point ... the pleadings will be fixed.' " O'Connell [v. Hyatt Hotels], 357 F.3d [152.]154 [(1st Cir. 2004)] (quoting Adv. Comm. Notes to 1983 Amends. to Fed.R.Civ.P. 16(b)). The deadlines established in the scheduling order may be extended on a showing of good cause. Id. Our case law clearly establishes that Rule 16(b)'s "good cause" standard, rather than Rule 15(a)'s "freely give[n]" standard, governs motions to amend filed after scheduling order deadlines. Id. at 154-55.

524 F.3d 315, 327 (1st Cir. 2008).

In her Third Amended Complaint Choate pressed a count under the Rehabilitation Act and the Americans with Disabilities Act (3d. Am. Compl. ¶¶ 59-69); 42 U.S.C. § 1983, the Eighth Amendment, and the Fourteenth Amendment  (id. ¶¶ 70-94); the Maine Tort Claims Act (id. ¶¶ 95-103); the Maine Civil Rights Act (id. ¶¶ 104-106); Wrongful Death (id. ¶¶107-109); and Conscious Pain and Suffering (id. ¶¶ 110-111).

In her second version of the proposed Fourth Amended Complaint, Choate has a count under 42 U.S.C. § 1983 and the Fourteenth Amendment (making no mention of the Eighth Amendment) (2d Proposed Fourth Am. Compl. ¶¶ 24-32); the Maine Civil Rights Act (id. ¶¶ 33-37); Wrongful Death  (id. ¶¶38-40); and Conscious Pain and Suffering  (id. ¶¶ 41-42).  As the State defendants recognize, Choate's proposed fourth amended complaint – version 2 mind you – has streamlined the complaint.  The consensual dismissal of the defendants originally sued on the theory of deliberate indifference to Rideout's pre-suicide-attempt mental health needs has eliminated much of the verbiage and many of the factual allegations of the earlier versions of the complaint.

The footprint of this case does not present a complex scenario[5] apropos which discovery would uncover unforeseeable factual detours necessitating additional legal theories. This is a prison suicide case. Although in such suits each plaintiff's case will be unique and independently tragic, prison suicide cases generically raise a question of pre-suicide attention to the prisoner's mental health, the monitoring of the inmate, the discovery of the attempt, and the response by personnel when the attempt is discovered. In other words, the plaintiff's litigation schematic is: what happened before, what happened during, and what happened after? With respect to this last factor, very little is needed to apprise the plaintiff of the possibility that there was potentially not an adequate policy or training protocol in the institution vis-à-vis the procedures in place to alert personnel to a possible suicide and resuscitation of inmates after such attempts. While I understand plaintiff's counsel's argument that he is not a medical doctor, he has retained the assistance of medical experts and has had their services since fairly early in the case. With regards to his response to the opposition to his pending motion to amend, counsel has been forthright in conceding that his allegations pertaining to the pre-suicide attention to Choate's son's mental condition and placement are not sustainable given the discovery and the deposition testimony of the key witnesses. Thus, the proposed amendment to the complaint eliminating those allegations makes good sense.

Choate distills her position regarding the additional allegations in the proposed amendment in her reply (Doc. 107) to the supplemental responses:

> It is the combination of actions by MSP and CMS agents and employees that supports the conclusion of deliberate indifference. It is not the first time eight months later we have raised the claim. The purpose of discovery is to allow discovery of facts. Discovery was provided by the Department of Corrections six months after the case was begun. It was produced to Plaintiff's expert in January and his opinion indicates serious indifference to the rights of Ryan Rideout.

---

[5]    The same cannot be said for the docket of his case. (See, e.g., Doc. No.39.)

The Department of Correction Defendants suggest the video is clear evidence of due care for Rideout on the one hand and on the other argue Plaintiff should have appreciated the evidence of faulty CPR from the video much earlier. Counsel is not a medical doctor. The Plaintiff is not a doctor. It takes some time to percolate facts. And even as late as March 26, 2009, Theresa Kasteloot indicated CMS had evidently not followed the recommendations of the Fitzpatrick Report. Exhibit A hereto, Deposition of Teresa Kasteloot, CMS designee, March 26, 2009. Pp 38, 53, 91.

(Pl.'s Reply Supp. Resp. at 2.)

While, I understand Choate to be complaining about discovery delays that hindered preparation, it is hard to fathom why Choate would have originally named as defendants in federal court Magnusson, Merrill, Reilly and CMS if he was not contemplating a claim along the lines of failure to train or failure to supervise, or custom and policy.  There is not a single allegation in any version of the complaint that there could be any constitutional liability for any of these named defendants other than in a supervisory capacity.  None of them are alleged to have been on the scene or to have had any direct involvement with Rideout at all.  Count One of the proposed Fourth Amended Complaint, the only count alleging a violation of the United States Constitution, begins at ¶ 24, incorporating the earlier paragraphs identifying the parties and containing factual allegations.  For purposes of this proposed amendment, the relevant factual allegations are as follows:

- 15. On October 5, 2006, at approximately 11:35 P.M., a medical team composed of employees of Maine State Prison came down the corridor with a stretcher, two sergeants, followed by a Captain. The medical cart, for furnishing of which Defendant CMS was responsible, was inadequately furnished to salvage the life of a person who had attempted suicide, including failure to have the defibrillator on it, and a breathing tube. Nor was a key to the oxygen tank available. (Proposed 4th Am. Compl. ¶ 15.)
- 17. Neither Defendants Beard, Peters or other personnel who came to the scene were not adequately trained in necessary CPR, or were provided adequate and necessary equipment for the provision of which the Defendant CMS and the Department of Corrections were responsible. (Proposed 4th Am. Compl. ¶ 17.)
- 25. Before October 5, 2006, the Defendants, jointly, severally and individually, and in their representative capacities, developed and maintained policies and customs in the

training, discipline and supervision of Corrections officers that exhibited deliberate indifference to the Constitutional rights of the prison population. (Proposed 4th Am. Compl. ¶ 25.)

- 26. The Defendants, Jeffrey Merrill, Martin Magnusson and Nelson Reilly, jointly, severally, and individually, and in their representative capacity maintained a policy or custom of deliberate indifference to the provision of life saving equipment, enforcement of the emergency buzzer system, and training in life saving techniques by guards, which allowed warning of suicides, or suicide attempts. (Proposed 4th Am. Compl. ¶ 26.)

- 27.  As a direct result of the deliberate indifference of the Defendants to the safety of prisoners, including Ryan Rideout, Ryan Rideout died. (Proposed 4th Am. Compl. ¶ 27.)

- 28. The Defendants, Martin Magnusson, Jeffrey Merrill and Nelson Reilly, acted with deliberate indifference to the Constitutional rights of the inmates in the Special Management Unit by failing to take adequate steps to discipline, supervise and train Defendants Robert Beard, Michael Peters, James O'Farrell and other workers to ensure the safety of its inmates. (Proposed 4th Am. Compl. ¶ 28.)

- 29. Defendants Commissioner Martin Magnusson, Warden Jeffrey Merrill, Deputy Warden James O'Farrell and Deputy Warden Reilly, acquiesced and knew that neglect and misconduct by Guards and other employees or agencies including CMS towards the inmates in the Special Management Unit, of the same kind that ultimately resulted in Rideout's death, would not result in sanction by their employer; (Proposed 4th Am. Compl. ¶ 29.)

- 30. The Defendants, jointly, severally, individually, and in their representative capacities and capacities as employees of the State, acted with "deliberate indifference" to the Decedent Ryan Rideout's situation, and violated the Decedent's right to be free from Cruel and unusual Punishment prohibited by the Eighth Amendment of the United States Constitution. (Proposed 4th Am. Compl. ¶ 30.)

- 31. The Defendants Merrill, Magnusson, Reilly, and O'Farrell, who were in a supervisory capacity, jointly, severally, individually, and in their Representative capacities, and as employees of the State, knew, had reason to know, and were placed on actual notice of Ryan Rideout's high and extreme need to be watched so he did not kill himself; knew or had reason to know and were placed on actual notice that the alarm systems in the prisoner's individual cells could be turned off in "control " by correction officers, creating a situation where response to suicide attempts was severely hindered; knew or had reason to know and were placed on actual notice that because some of the inmates could ring the alarm unnecessarily such alarms were routinely often turned off or ignored by guards. (Proposed 4th Am. Compl. ¶ 31.)

- 32. Leaving Ryan Rideout in the cell in which he was placed on the night of his suicide, under these above circumstances, exhibited deliberate indifference to and reckless disregard for Ryan Rideout's safety, and was the direct and proximate cause of the Ryan Rideout's death. (Proposed 4th Am. Compl. ¶ 32.)

During the telephonic hearing regarding this proposed version of the amended complaint,

Choate's counsel explained that he also intended to include within Count One the further

allegations he made in Count Two[6] regarding not only Magnusson, Merrill, Reilly, O'Farrell, and CMS, but also Beard, Peters, and Robinson. I will construe his 4.2 version of the proposed Fourth Amended Complaint as doing so. Thus, I conclude that what we have is a proposed Fourth Amended Complaint (version 4.2) that would accomplish the following:

1.) It eliminates all allegations under the ADA and the Rehabilitation Act and all claims against *any* individuals for the pre-suicide attention to the mental health of Ryan Rideout. (This includes all the defendants who remain in the case.)

2.) It alleges in Count One that the defendants, Merrill, Magnusson, Reilly, O'Farrell and CMS, have supervisory liability under the United States Constitution for allegations arising from (1) the provision of life saving equipment (the absence of a portable defibrillator and oxygen equipment from the so-called "crash cart"); (2) the enforcement or nonenforcement of the emergency buzzer system (not applicable to the allegations against CMS); and (3) the perceived inadequacies in training in life saving techniques by guards. Additionally Beard, Peters, Robinson, and O'Farrell are alleged to have directly violated Rideout's rights under both the United States Constitution and the Maine Constitution, irrespective of the way in which the proposed Fourth Amended Complaint is constructed. There are no new allegations about what these four defendants did in terms of constitutional violations and the parties have a previously developed record relating to all four individuals. (I note that O'Farrell appears to be sued for both direct and supervisory conduct, at least under my understanding of the complaint.)

---

[6]   Count Two of version 4.2 of the Fourth Amended complaint is brought entirely under 5 M.R.S.A. § 4682, the Maine Civil Rights Act. Choate's counsel attributes that anomaly to "inartful pleading" (even though this is his fifth attempt to compose a complaint commensurate with his claims). Beard's counsel did not suggest that he thought Beard was excluded from the 42 U.S.C. § 1983 count. Counsel for Peters and Robinson simply maintains that there is insufficient evidence to support any claim against the two of them.

With this understanding of what the proposed amended complaint is intended to accomplish, I will grant the motion to amend, in part, but subject, however, to the following conditions:

1.) The Fourth Amended complaint as docketed will be in the **exact** form of the document found at Doc. No. 94-5 and that will become the operative pleading in this case, as construed above.

2.) To the extent plaintiff's counsel's supplemental memorandum requested leave to further amend this complaint to add new parties, it is denied. It is much too late in the litigation to add entirely new parties and additional new theories to the litigation.

3.) A new dispositive motion deadline is set for June 22, 2009. Each party may file any dispositive motion he or she believes is appropriate, either by way of a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment. The motions will be limited to the allegations in the Fourth Amended complaint because all other claims have been dismissed from the case.

4.) Choate may not name any new experts relating to the new allegations raised in the complaint[7] nor may any further discovery be commenced at this point in time.

5.) Following final resolution of the first round of dispositive motions, if any defendants remain in the case and wish to make expert designations which specifically address the three new factual areas of inquiry raised by the motion to amend, they will have 60 days to do so. Once additional defense experts have been disclosed, Choate's counsel will have 30 days to depose any such expert and supplement any plaintiff's expert report with additional rebuttal opinions.

---

[7]   Choate's counsel indicated that it is his intention to rely solely on his current designation of experts.

6.)  Remaining defendants will then be given leave to file a second round of dispositive motions, limited to motions for summary judgment on the "new" issues raised by the "new" factual allegations.

I recognize that allowing Choate to amend her complaint at this late date is somewhat unusual.  Nevertheless, it is clear that the existing complaint, the Third Amended Complaint, no longer reflects the reality of what this litigation is about.  Arguably plaintiff's counsel did not receive all of the factual information needed to formulate his theory of supervisory liability until late in the case.  By allowing the late amendment of the complaint, but delaying the subsequent designation of experts until following a first round of dispositive motions, the prejudice to the defendants is limited.  Defendants are free to challenge the complaint on issues such as causation, adequacy of the pleadings, and sufficiency of the facts (especially as to those defendants who are not impacted by the new allegations in the amended complaint, such as Beard, Robinson, and Peters) during the first round of dispositive motions.   Defendants also now have the advantage of having a <u>final</u> version of the operative pleading in order to focus their arguments during the initial round of dispositive motions.   If necessary, the defendants will also be able to secure additional expert opinions as to the new theory of liability set forth in the Fourth Amended Complaint after the first round of dispositive motions.  However, they are free to challenge the theory of liability in the first round of dispositive motions because the plaintiff has designated all of his experts and completed all discovery at this time.

<u>CERTIFICATE</u>

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

***So Ordered.***

May 26, 2009                              /s/ Margaret J. Kravchuk
                                         U.S. Magistrate Judge

9