UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRENDA CHOATE, Personal Representative of the Estate of Ryan Rideout, | )<br>)<br>)<br>) |
| Plaintiff | )<br>) |
| v. | ) Civil No. 08-49-B-W<br>) |
| JEFFREY MERRILL, et al. | )<br>)<br>) |
| Defendants | ) |

### *Recommended Decision on Motion for Summary Judgment filed by Corey Robinson (Doc. No. 126)*

On October 5, 2006, Ryan Rideout died after he hung himself in the B-wing of the Special Management Unit of the Maine State Prison. His mother, Brenda Choate has sued multiple defendants in her capacity as the personal representative of her son's estate. Choate believes that these defendants violated the United States and the State of Maine Constitution because they were deliberately indifferent to the prevention of his death once he was discovered hanging in his cell. However, her claim against one of the prison guards has an entirely different etiology, based solely upon the guard's alleged conduct prior to the suicide.

Defendant Corey Robinson has moved for summary judgment. Choate's theory against Robinson is that Robinson, directly or indirectly, provided Rideout with cocaine within twenty-four hours of Rideout's death and that the cocaine ingestion contributed to Rideout's decision to take his life. However, even assuming the cocaine was supplied to Rideout through Robinson, Choate has no tenable evidence that the cocaine was causally related to Rideout's suicide. Thus Choate has not created a genuine dispute of fact, assuming Robinson is responsible directly or indirectly for the cocaine identified at Rideout's autopsy, that the provision of that

cocaine/contraband through a guard could constitute an Eighth Amendment violation apropos a subsequent suicide. I recommend that the Court grant Robinson's motion for summary judgment.

## DISCUSSION

*Deliberate Indifference*

In Manarite v. City of Springfield, the First Circuit described the Eighth Amendment deliberate indifference standard for prison suicide cases:

> The cases also indicate that, when liability for serious harm or death, including suicide, is at issue, a plaintiff must demonstrate "deliberate indifference" by showing (1) an unusually serious risk of harm (self-inflicted harm, in a suicide case), (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk. The risk, the knowledge, and the failure to do the obvious, taken together, must show that the defendant is "deliberately indifferent" to the harm that follows.

957 F.2d 953, 955-56 (1st Cir. 1992); accord Bowen v. City of Manchester, 966 F.2d 13, 17 (1st Cir. 1992). The United States Supreme Court's Farmer v. Brennan, 511 U.S. 825 (1994) cited Manarite as one of the Circuit level cases requiring a showing of recklessness, as opposed to mere negligence. 511 U.S. at 836. Farmer made clear that to demonstrate recklessness sufficient to hold a defendant liable under the Eighth Amendment, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Thus, the Manarite test is consistent with Farmer and continues to be useful for correctional institution suicide cases because of its tailored analysis. See also Pelletier v. Magnusson, 201 F. Supp. 2d 148, 162-65 (D. Me. 2002).

*Summary Judgment Standard*

"At the summary judgment stage," the United States Supreme Court explained in Scott v. Harris, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." 550 U.S. 372, 380 (2007) (citing Fed. Rule Civ. Proc. 56(c)). Scott reemphasized, "'[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)). "'[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

*Material Facts*

For his part, Corey Robinson's case is simple. He insists that he did not ever provide cocaine to Ryan Rideout. (SMF ¶ 1; Robinson Aff. ¶ 4.) He has never provided cocaine or any other unlawful drug to any prisoner. (SMF ¶ 2; Robinson Aff. ¶ 3.) Choate designated only one expert on the issue of whether the use of cocaine by Ryan Rideout contributed to his taking of his life, Dr. James Hooper. (SMF ¶ 3; Sleek Aff. ¶ 2.)

With regards to whether or not there were drugs brought into the Lower Corridor of B-Wing, Rideout's fellow inmate, Jesus Rodriguez, identified a correctional officer by the name of

3

Corey Robinson who would bring drugs into the Lower Corridor of B-Wing on a regular basis and that this was widely known by the inmates.  (Resp. SMF ¶ 1; Rodriguez Dep. at 10: 13-25 & 11: 1-4; SAMF ¶ 8.)   The record evidence does not explain *how* Rodriguez came to know that Robinson brought drugs into the prison, but he maintains that he knew that Robinson brought drugs into the prison.  Choate insists that it is a common almost daily fact that inmates "fish" or pass magazines, food, or whatever they want from one to the other from cell to cell. A guard does not have to give drugs directly to any one prisoner for other prisoners to have access to drugs.  The process of fishing is allowed by 'the persons' in SMU. The process of fishing is known to nearly everybody who works at the prison including the Warden, who has access also to all cameras in the SMU and the process is allowed. (Resp. SMF ¶2; SAMF ¶ 10; Scherr Aff. ¶¶ 13, 22;  Video of cell block.)  Jesus Rodriguez indicated at his deposition that to his knowledge, there has not been an inquiry about the use of drugs or their entry into the Maine State Prison. (SAMF ¶ 2; Rodriguez Dep. at 11: 5-6.)  Ira Scherr, an experienced guard and labor leader at the Maine State Prison, has stated under oath:

> Guards are not inspected for having drugs at the Prison. I have spoken personally to Warden Jeffrey Merrill stating that I could bring an Uzzi into the Prison and not be caught. Other than change of shifts, in the evening after six p.m., a Guard can bring almost anything into the Prison. Thermoses are not opened. Metallic things can be put in thermoses or simply their pockets. Officers frequently are allowed to walk around the metal detectors. Guards on armed patrol have been known to accidentally enter the prison with a firearm, forgetting they had it on them. Ralph Nichols the prison inspector has smuggled a firearm into the Maine State Prison to demonstrate their lack of effective screening.

(SAMF ¶ 5; Scherr Aff. ¶ 14.)  Drug testing is not done on officers and there is no psychological profiling of officers.  (SAMF ¶ 6; Scherr Aff. ¶ 15.)

Dr. Marguerite DeWitt, M.D. the Deputy Chief Medical Examiner for the State of Maine, performed the Autopsy on the body of Ryan Rideout on October 6, 2006, within twelve hours of

Rideout's death, and sent blood samples to Central Valley Toxicology, Inc. for testing. The results reported Rideout had "Cocaine and Opiates detected" in his blood samples. (SAMF ¶ 4; Resp. SAMF ¶ 4.)   The cocaine consumed by Ryan Rideout was taken within the last day of his life.  (SAMF ¶ 7; Resp. SAMF ¶ 7.)

With respect to her evidentiary burden relating to the constitutional injury, Choate contends that she has designated two experts on the issue of whether the use of cocaine by Ryan Rideout contributed to his suicide, Dr. James Hooper, and Dr. Marguerite DeWitt, M.D.,  Deputy Chief Medical Examiner of the State of Maine.  In Plaintiff's Designation of Expert Witnesses DeWitt was listed as testifying solely about the toxological findings in the Medical Examiner's report. (Resp. SMF ¶ 3; Medical Examiner Report, Doc. No. 143-14; Hooper Assessment, Doc. No. 145-3.)   The expert opinion of James F. Hooper, M.D., providing a Forensic Evaluation of Ryan Rideout states in the "Assessment" paragraph:

> First and foremost, Mr. Rideout was positive for Cocaine! Some of his cardiac symptoms may have come from this; no notes indicate any questioning of this substance abuser about use in the prison. Since cocaine is an illegal & short acting drug, someone had to bring it into the prison to him. Cocaine can cause mood swings, including suicidal depression.

(SAMF ¶ 3; Resp. SAMF ¶ 3.)  However, there is no dispute that Hooper cannot give an opinion that it is more likely than not that the cocaine in Rideout's system at the time of his suicide contributed to his taking his life. (SMF ¶ 4; Hooper Dep. at  82: 11 – 83:19. 192: 12-18; Resp. SMF ¶ 4.)

### *Recommendation as to Choate's Eighth Amendment Claim against Robinson*

To reiterate, Choate's claim against Robinson is that Robinson, directly or indirectly, provided Rideout with cocaine within twenty-four hours of Rideout's death and that the cocaine contributed to Rideout's decision to take his life. Choate's entire summary judgment case against

5

Robinson is premised on his reputation in the eyes of one inmate[1] for providing drugs and a supposition that the ingestion of cocaine within twenty-four hours of his death contributed in some way to Rideout's decision to hang himself.[2]  Although I can imagine a case in which this type of allegation vis-à-vis a correctional officer's drug smuggling could create a triable Eighth Amendment claim against that officer, based on the evidence propounded by Choate this is not one.  On the record before me, the case against Defendant Robinson is no more than, in Scott's parlance, "a metaphysical doubt."

## CONCLUSION

For the reasons stated above, I recommend that the Court grant Defendant Robinson's motion for summary judgment.

---

[1] The statements of facts reliant on the Scherr affidavit do not mention Robinson by name.

[2] Specifically, Choate's argument vis-à-vis Robinson is:

> The Medical Examiner's Report shows cocaine and oxycodone in Rideout's system. Doctor Hooper identified cardiac symptoms as coming from being high on cocaine. PSMF ROB ¶¶ 3,7. No notes indicate any questioning about substance abuse in prison. Someone had to bring the cocaine into Rideout. Cocaine can cause mood swings including suicidal depression. Why did no one ask? It is below any reasonable standard of care for a Prison to allow abuse of deadly and mind altering drugs. PSMF ROB ¶ 3.7; Plaintiff's Exhibit # 20, Hooper Report.
>
> Jesus Rodriguez identified Corey Robinson as a guard who brought drugs into Lower Corridor of B Wing, Special Management Unit, on a regular basis PSMF ROB PSMF ¶ 8; Plaintiffs Exhibit # 32,Rodriguez deposition, page 10 lines 13-25, page 11, lines 1-4). Ira Scherr's deposition corroborates that this kind of illegal import is more than plausible. PSMF ROB ¶ 5. Plaintiff's Exhibit # 9, page 4, paragraph 14.
>
> Rodriguez's motive may be to frame Robinson.  Officer Beard could lose his defense costs if he fingers Robinson, an employee of DOC. PSMF ROB ¶ 9. It is unnecessary to bring drugs to a particular cell or prisoner for them to get there. PSMF ROB ¶ 10. There is a plausible and circumstantial case against Robinson, based on the contested fact that Robinson did or did not bring drugs into the SMU on a regular basis. Direct liability exists in respect to Robinson's conduct because it would be manifest to any reasonable official that his conduct in bringing in mind altering drugs to the SMU was very likely to violate an individual's constitutional rights.

(Consolidated Resp. at 18-19.)

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 2, 2009.